IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


SHARON JENKINS,

        Plaintiff,

vs.                              Case No. 12-1072-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On October 15, 2010, administrative law judge (ALJ) James S. Stubbs issued his decision (R. at 10-16). Plaintiff alleges that she has been disabled since August 6, 2008 (R. at 10). Plaintiff is insured for disability insurance benefits through

September 30, 2012 (R. at 12). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 12). At step two, the ALJ found that plaintiff has the following severe impairment: multiple sclerosis (R. at 12). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 13). After determining plaintiff's RFC (R. at 14), the ALJ determined at step four that plaintiff is able to perform his past relevant work (R. at 16). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 16).

**III. Are the ALJ's RFC findings supported by substantial evidence?**

The ALJ limited plaintiff to light work, including the ability to lift 20 pounds occasionally, and 10 pounds frequently, stand and/or walk for 30 minutes at a time for a total of 4 hours in an 8 hour day, and sit in excess of 2 hours at a time for a total of in excess of 6 hours in an 8 hour day. Furthermore, plaintiff cannot use ladders and scaffolds, and cannot work at unprotected heights, but can occasionally use stairs (R. at 14).

In support of his RFC findings, the ALJ stated the following:

> The claimant testified at the hearing that she is able to clean, do laundry, shop, drive and cook. These activities are

5

> inconsistent with the claimant's allegations
> of disability and suggest that she is much
> more physically capable than alleged. While
> the claimant said she takes naps during the
> day for about two hours, her treating
> physician did not opine that she must nap
> during the day. Moreover, the medical
> expert opined that there was no medical
> reason that she should be tired. Thus, the
> undersigned finds that the claimant's
> napping during the day is not medically
> necessary for the claimant…
>
> As for the opinion evidence, the undersigned
> gives some weight, but not controlling
> weight to the opinions of the Dr. Rowe,
> because his opinions are not supported by
> the overall record, objective testing, such
> as MRIs and MS Functional Capacity
> Performance tests, and her extensive daily
> activities. Instead, Dr. Rowe's opinions
> appear to be based on the claimant's
> subjective complaints rather than true,
> objective testing. However, the undersigned
> gives great weight to the opinions of the
> medical expert, who indicated that the
> claimant could perform some light work,
> because they are generally consistent with
> the objective evidence, the claimant's
> reported daily activities and treatment
> records indicating that her condition is
> stable.

(R. at 15).

In his testimony, the medical expert, Dr. Giada, testified that "there's no medical reason for her to be tired, I mean there's nothing in the record that says she should be tired, and hypersomnia[2]" (R. at 37). The ALJ gave great weight to the

---

[2] Hypersomnia, or excessive sleepiness, is a condition in which a person has trouble staying awake during the day. People who have hypersomnia can fall asleep at any time -- for instance, at work or while they are driving. They may also have other sleep-related problems, including a lack of energy and trouble thinking clearly. http://www.webmd.com/sleep-disorders/guide/hypersomnia.

opinions of Dr. Giada, and specifically relied on this testimony when he found as follows:

> Moreover, the medical expert opined that there was no medical reason that she should be tired. Thus, the undersigned finds that the claimant's napping during the day is not medically necessary for the claimant.

(R. at 15).

However, a statement from plaintiff's treating physician, Dr. Rowe, stated the following:

> Her diagnosis of idiopathic hypersomnia was made after a sleep study followed by multiple sleep latency testing performed August 15, 2002. Despite having relatively good sleep quality the night before, she had sleep onset in four out of four naps the next day with a mean sleep latency of only 1.8 minutes. **This was consistent with severe pathological sleepiness**.

(R. at 467, emphasis added). Dr. Rowe also stated on May 11, 2010 that, despite plaintiff's treatment for multiple sclerosis, fatigue and sleepiness, and mood disorder, plaintiff was still unable to function well due to the combined effects of all of those conditions and symptoms. Dr. Rowe concluded that the combination of these conditions and symptoms supported her application for disability (R. at 468).

Furthermore, Dr. Pahwa from the University of Kansas Medical Center examined plaintiff on December 12, 2006. He concluded as follows:

7

> The patient has fatigue as evidenced by the Fatigue Severity Scale. This could be secondary to her depression and underlying multiple sclerosis…
>
> **The patient has excessive daytime sleepiness as evidenced by the Epworth Sleepiness Scale**. This could be secondary to her medications or underlying diseases…

(R. at 273-274, emphasis added). Thus, contrary to the testimony of Dr. Giada, the medical expert, a sleep study and testing by Dr. Pahwa provide medical reasons in the record for plaintiff to be tired and suffer from severe pathological or excessive daytime sleepiness. Dr. Rowe stated that the diagnosis of idiopathic hypersomnia was made following a sleep study with findings consistent with severe pathological sleepiness. The testimony of Dr. Giada is contradicted by the medical records; therefore, the ALJ erred by relying on the testimony of Dr. Giada in finding that plaintiff should not be tired or need to nap during the day. On remand, the ALJ will need to examine the medical evidence of plaintiff's hypersomnia, and make new findings regarding the relative weight to give the medical opinion evidence in light of the medical evidence regarding plaintiff's excessive or severe pathological sleepiness, and make new RFC findings that take into account plaintiff's hypersomnia, and the combined effects of plaintiff's multiple sclerosis, fatigue and sleepiness, and mood disorder.

The ALJ also discounted the opinions of Dr. Rowe because, according to the ALJ, his opinions "appear to be based on the claimant's subjective complaints rather than true, objective testing" (R. at 15). In the case of Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." Id. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." Id. at 1253.

Subsequently, in the case of Victory v. Barnhart, 121 Fed. Appx. 819 (10th Cir. Feb. 4, 2005), the court held:

> The ALJ's finding that Dr. Covington's opinion was based on claimant's own subjective report of her symptoms impermissibly rests on his speculative, unsupported assumption. See Langley, 373

9

> F.3d at 1121 (holding that ALJ may not
> reject a treating physician's opinion based
> on speculation). We find no support in the
> record for the ALJ's conclusion. Nothing in
> Dr. Covington's report indicates that he
> based his opinion on claimant's subjective
> complaints, and the ALJ's finding ignores
> all of Dr. Covington's examinations, medical
> tests, and reports. Indeed, the ALJ's
> discussion of Dr. Covington omits entirely
> his March 22, 2001 examination and report.
> His April 3, 2001 statement might well have
> been based on his recent first-hand
> examination and observation of claimant
> during this examination, performed less than
> two weeks earlier, rather than on claimant's
> subjective complaints, as the ALJ
> speculated. See Morales v. Apfel, 225 F.3d
> 310, 317 (3d Cir.2000) (noting that the
> treating physician's opinion may "reflect
> expert judgment based on a continuing
> observation of the patient's condition over
> a prolonged period of time").

121 Fed. Appx. at 823-824.

As Langley makes clear, the ALJ must have a legal or evidentiary basis for asserting that a medical source report was based on plaintiff's subjective complaints. However, the ALJ did not have either a legal or evidentiary basis for his assertion that Dr. Rowe's opinions appear to be based on plaintiff's subjective complaints rather than true, objective testing. In fact, contrary to this assertion by the ALJ, Dr. Rowe's letter makes clear that the diagnosis of idiopathic hypersomnia was made following a sleep study which had findings consistent with severe pathological sleepiness. On remand, the

10

ALJ will need to consider the opinions of Dr. Rowe in light of the sleep study findings and the examination by Dr. Pahwa.

**IV. Did the ALJ properly consider plaintiff's activities of daily living?**

In his decision, the ALJ noted that plaintiff testified at the hearing that she is able to "clean, do laundry, shop, drive and cook. These activities are inconsistent with the claimant's allegations of disability" (R. at 15). The ALJ later referred to plaintiff's "extensive daily activities" (R. at 15) when discounting the opinions of Dr. Rowe. The ALJ had also found that plaintiff had no restrictions in activities of daily living (R. at 13).

First, according to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity. 20 C.F.R. § 404.1572(c) (2012 at 398). Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in

11

substantial gainful activity.  Krauser v. Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping.  The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible.  The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work**.  As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world."  In other words, evidence of performing general housework does not preclude a finding of disability.  In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries.  We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery

> shopping, and visiting friends. We found
> this to be an unpersuasive reason to deny
> benefits: "**We have repeatedly held...that
> 'the ability to do activities such as light
> housework and visiting with friends provides
> little or no support for the finding that a
> claimant can perform full-time competitive
> work**.'" Id. (quoting Hogg v. Shalala, 45
> F.3d 276, 278 (8th Cir.1995)). Moreover, we
> have reminded the Commissioner
>
>> **that to find a claimant has the
>> residual functional capacity to
>> perform a certain type of work,
>> the claimant must have the ability
>> to perform the requisite acts day
>> in and day out, in the sometimes
>> competitive and stressful
>> conditions in which real people
>> work in the real world...The
>> ability to do light housework with
>> assistance, attend church, or
>> visit with friends on the phone
>> does not qualify as the ability to
>> do substantial gainful activity**.
>
> Thomas v. Sullivan, 876 F.2d 666, 669 (8th
> Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

The ALJ asserted that plaintiff's activities are inconsistent with plaintiff's allegations of disability. However, this same argument by the ALJ in Draper was rejected by the court in that case. As the above cases make clear, the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.

Second, an ALJ cannot use mischaracterization of a claimant's activities of a claimant's activities by selective and misleading evidentiary review to discredit his/her claims of disabling limitations. Sitsler v. Astrue, 410 Fed. Appx. 112, 117-118 (10th Cir. Jan. 10, 2011). According to the ALJ, plaintiff's daily activities are inconsistent with her allegations of disability; the ALJ never mentioned any limitations in plaintiff's daily activities.

However, the ALJ, as in Sitsler, 410 Fed. Appx. at 117, ignored the numerous qualifications and limitations of her daily activities that are contained in the record. Plaintiff also testified that she naps frequently, and she does not engage in social activities or go out to a movie or a live event because of a lack of stamina. Plaintiff further testified that when she cooks, cleans, or does laundry, she does it in pieces, resting periodically before continuing that task (R. at 28-30).

The ALJ failed to mention plaintiff's limitations in her activities of daily living. An ALJ cannot use mischaracterization of a claimant's activities to discredit her claims of disabling limitations. Therefore, this case shall be remanded in order for the ALJ to reexamine plaintiff's credibility after considering the evidence regarding plaintiff's qualifications and limitations in her daily activities, and to consider plaintiff's credibility in light of the medical

evidence from Dr. Rowe and Dr. Pahwa regarding plaintiff's diagnosis of hypersomnia resulting in excessive or severe pathological sleepiness, and the combined effects of plaintiff's multiple sclerosis, fatigue and sleepiness, and mood disorder.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 24th day of July, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge